**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

ENTERED
04/03/2009

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ROBERT CANO,** *et al*, | § | **Case No. 02-70359** |
| Debtor(s). | § | |
| | § | **Chapter 13** |
| | § | |
| **ROBERT CANO,** *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **Adversary No. 08-07019** |
| | § | |
| **GMAC MORTGAGE CORP,** | § | |
| Defendant(s). | § | **Judge Isgur** |

<u>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO
WITHDRAW THE REFERENCE**</u>

Pursuant to 28 U.S.C. § 157(d), the District Court may withdraw, in whole or in part, any case or proceeding referred under § 157, on its own motion or on a timely motion of any party, for cause shown. For the reasons set forth below, this Court recommends that the District Court not withdraw the reference to the Bankruptcy Court of adversary proceeding No. 08-01004.

**Summary**

Defendant GMAC Mortgage Corp. ("GMAC") requests withdrawal of the reference of Plaintiffs' class action adversary proceeding. GMAC contends that withdrawal is mandatory because Plaintiffs' complaint raises issues that require consideration of non-bankruptcy federal laws. GMAC also contends that cause exists for permissive withdrawal largely because the District Court can resolve this adversary proceeding more efficiently than this Court.

This Court finds GMAC's arguments unpersuasive. Plaintiffs' complaint is steeped in fundamental bankruptcy issues. Plaintiffs' complaint essentially alleges that GMAC has violated bankruptcy court orders and has deprived Plaintiffs of a fundamental chapter 13 purpose: a fresh

start.  The complaint asserts core bankruptcy issues that must be resolved by a careful analysis of the Bankruptcy Code and Rules.  Congress created bankruptcy courts to implement the Bankruptcy Code and Rules.  GMAC has not met its burden to show cause for withdrawal of the reference.

**Background**

**1. Summary of Allegations**

Plaintiffs are former chapter 13 debtors who have mortgage contracts with GMAC Home Loans, Inc. ("GMAC").  Plaintiffs allege that they diligently completed their chapter 13 plans and received a discharge.  Plaintiffs' plans provided for the cure of all arrears on their home mortgages.  Accordingly, when Plaintiffs completed their final plan payment, they should have faced a "new opportunity in life with a clear field for future effort," unfettered by alleged arrearages on their home mortgages. *Local Loan Co. v.  Hunt*, 292 U.S. 234, 244–45, 54 S. Ct. 695, 78 L. Ed. 1230 (1934).

Plaintiffs allege that they entered their first day of post-discharge life in default. Essentially, Plaintiffs allege that GMAC managed their mortgage accounts in a manner that violated Plaintiffs' chapter 13 plans.  Plaintiffs allege that GMAC allocated chapter 13 plan payments among arrearages, pre-petition debts, and current principal and interest in contravention of Plaintiffs' plans.  Plaintiffs also allege that defendant GMAC charged or accumulated undisclosed attorneys' fees and related expenses during their chapter 13 bankruptcy cases without notice to Plaintiffs or the Court.  Plaintiffs allege that only now, after Plaintiffs received their discharge and the Bankruptcy Court's eyes have turned to other cases, GMAC is seeking to collect the accrued fees and expenses.  Plaintiffs allege that GMAC is threatening to,

and in fact, will foreclose on their homes if they do not pay the thousands of dollars in accumulated fees and expenses.

GMAC disputes Plaintiffs' rendition of the facts.

**2. Specific Allegations**

The Canos filed a chapter 13 bankruptcy petition in August of 2002. The Bankruptcy Court issued an order confirming the Canos' chapter 13 plan on February 20, 2003. The plan and a subsequent modification to the plan provided for current monthly principal and interest payments, pre and post-petition arrearages, escrow shortages, and attorneys' fees incurred by GMAC.

As of June of 2005, the Canos allege they were current on all mortgage obligations, including property taxes. Nevertheless, the Canos allege that GMAC attempted to collect unauthorized fees and expenses in a manner that violated various provisions of the Bankruptcy Code, Bankruptcy Rules, and court orders. In July of 2005, GMAC filed an amended proof of claim seeking an amount that exceeded the Canos' original principal balance and that allegedly contained unsupported and unauthorized amounts. During the years of 2006 through 2008, the Canos allege that GMAC sent them statements showing "past due" or "unpaid" amounts that were unsupported and unauthorized.

On January 11, 2008, the trustee for the Canos' bankruptcy case filed a motion for an order declaring the Canos' mortgage current. The motion stated that the debtor had completed all plan payments and all amounts claimed in GMAC's proofs of claim were paid. GMAC did not object to the motion. On February 4, 2008, the Bankruptcy Court issued an order finding that the Canos' had paid all amounts claimed in GMAC's proofs of claim and that the Canos were current on their mortgage obligations. The order also required the Canos to resume making

3

monthly payments directly to GMAC.

On February 21, 2008, the trustee filed a report and notice of bar date that showed all the plan payments made to GMAC and required GMAC to file a supplemental proof of claim to recover any additional amounts authorized by their mortgage contract. The report stated that any claim not filed within 60 days would be barred. The report also stated that GMAC must provide the trustee, the debtor, and debtor's counsel with written notice of any changes in the debtor's monthly payment obligations. GMAC did not file a supplemental claim or object to the notice.

The Bankruptcy Court granted the Canos a chapter 13 discharge on February 26, 2008. Despite the discharge, the court order finding the Canos current, and the trustee's final report, GMAC allegedly continued to attempt to collect amounts allegedly incurred during the Canos' bankruptcy case. On March 18, 2008, GMAC allegedly sent the Canos a statement demanding amounts for "unpaid amounts," "late charge," and "other," totaling $5,936.71. A similar statement was allegedly sent on April 3, 2008. On May 6, 2008, GMAC allegedly sent a notice of intent to accelerate and foreclose if $5,193.57 was not paid within 30 days.

On May 19, 2008, the Canos filed this adversary proceeding on behalf of a nationwide class. Plaintiffs seek to represent a class consisting of:

> All residential mortgage customers of GMAC in the United States who filed a chapter 13 bankruptcy proceeding prior to October 16, 2005 and received a Chapter 13 discharge but to whom GMAC nonetheless represented that their mortgage was in arrears or that they owed any interest, fees, charges, or expenses not specifically approved by an order of a United States Bankruptcy Court.

Plaintiffs request relief based on alleged violations of: Plaintiffs' chapter 13 plans, court orders confirming Plaintiffs' plans, Federal Rule of Bankruptcy Procedure 2016(a), various provisions of the Fair Debt Collections Act, and §§ 362(a)(1), (3), (4), (5), and (6), 524, 1322(a)(1), 1322(b)(5), 1326(c), 1327, 1328 of the Bankruptcy Code. Plaintiffs also assert

breach of contract, contempt, and abuse of process, and seek declaratory and injunctive relief. Plaintiffs largely rely on the Court's § 105 power to remedy the alleged violations. Plaintiffs seek actual and punitive damages, attorneys' fees and costs, and sanctions.

### 3. Motion to Withdraw the Reference

GMAC filed its original motion to withdraw the reference on July 11, 2008 (docket no. 8). GMAC supplemented the motion with a reply to Plaintiffs' response to the motion on October 6, 2008 (docket no. 32). On November 10, 2008, the Court held a hearing on the motion to withdraw the reference and on a motion to dismiss that was also filed by GMAC.

GMAC contends that the reference should be withdrawn under the mandatory and permissive provisions of § 157(d). GMAC contends that withdrawal is mandatory because resolution of Plaintiffs' complaint will require this Court to interpret two federal statutes that affect interstate commerce: the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA").

GMAC contends that there is cause for permissive withdrawal because resolution of the adversary by the District Court will lead to greater efficiencies. GMAC contends that: (1) the complaint presents non-core matters that only the District Court can resolve through a final order; (2) GMAC may assert a jury demand and only the District Court can hold a jury trial; (3) the District Court has greater familiarity with the jurisdictional and procedural issues raised by this adversary proceeding; and (4) an appeal of a district court order will be less-expensive and time-consuming.

For the reasons set forth below, the Court recommends denying GMAC's Motion to Withdraw the Reference.

### 4. Mortgages in Chapter 13

Plaintiffs' claims and GMAC's motion for withdrawal of the reference cannot be understood without an explanation of the mechanics of handling chapter 13 mortgages.[1] Chapter 13 includes several provisions drafted specifically to deal with mortgages. The provisions grant mortgage lenders special rights no other creditors share. Combined, the provisions have the effect of precluding the modification of a mortgage lender's right to payments pursuant to the lender's pre-petition mortgage contract. A chapter 13 plan may not reduce the lender's claim to the value of the collateral under § 506 nor may the plan alter the contractual interest rate.[2] The plan may not per se preclude the collection of fees and expenses allowed by the contract. Nor may the debtor obtain a discharge of amounts allowed by the contract.

Other provisions balance mortgage lenders' special rights with debtor rights and protections. The primary right provided to debtors is the right to cure arrearages and remain current on mortgage debt so that debtors emerge from chapter 13 with the promised fresh start.

Two sections of the Bankruptcy Code are at the heart of this dispute. Section 1322(b)(2) provides that a chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim
> that is secured only by a security interest in real property that is
> the debtor's principal residence, or of holders of unsecured claims,
> or leave unaffected the rights of holders of any class of claims;

[1] The Court's use of the term "mortgages" is for convenience and encompasses deeds of trust as well. However, this Memorandum Opinion is limited to mortgages or deeds of trust that are "secured only by a security interest in real property that is the debtor's principal residence" as set forth in § 1322(b)(2).

[2] The Court recognizes pending legislation in Congress that may pass (H.R. 1106 passed the United States House of Representatives on March 5, 2009) while this Report and Recommendation is being considered. The Court has reviewed both the Senate and House versions of the bill. Should the legislation pass, it would allow the modification of certain mortgages. Although the legislation is proposed to be retroactive, the Court has concluded (if passed in either of its current forms) that the proposed legislation would not affect the viability of Plaintiffs' claims.

6

11 U.S.C. § 1322(b)(2). The breadth of § 1322(b)(2) is limited by § 1322(b)(5), which reads as follows:

> *notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;*

11 U.S.C. § 1322(b)(5).

Section 1322(b)(2)'s protections are not limited to principal and interest payments. Rather, § 1322(b)(2)'s language is broad, precluding the modification of any contractual right. Most mortgage contracts, including GMAC's, allow lenders to incur reasonable expenses necessary to protect their security interest in a debtor's home ("Reimbursable Expenses"). Many mortgage contracts, including GMAC's, also contain provisions stating that the lender may charge and collect the incurred Reimbursable Expenses at any time. Mortgage lenders often, in fact, incur Reimbursable Expenses in a bankruptcy proceeding. GMAC may have incurred such Reimbursable Expenses in these cases. For the purposes of this motion, the Court assumes that GMAC also waited (at least in some instances) until Plaintiffs' bankruptcy cases were dismissed or closed before seeking to collect the Reimbursable Expenses.

Section 1322(b)(2)'s prohibition against modifying a mortgage lender's contract rights does not wholly immunize the lender from bankruptcy court oversight. Congress balanced mortgage lenders' protections by granting debtors the right to cure arrearages and remain current on the mortgage debt. Section 1322(b)(5) provides an explicit exception to § 1322(b)(2)'s prohibition of mortgage modifications. Regardless of the mortgage contract, § 1322(b)(5) allows debtors to cure mortgage arrearages and maintain current payments through a chapter 13 plan. 11 U.S.C. § 1322(b)(5).

Sections 1322(b)(2) and (b)(5), together, define how a mortgage lender will be paid in a chapter 13 plan. Based on these provisions, the plans in these cases provide that the debtors will pay a certain amount each month on account of their mortgages. A portion of the established amount must be allocated to the outstanding pre-petition arrearages, and the remainder must be allocated to current principal and interest payments.[3]

Section 1322(b)(5) gives debtors the explicit right and duty to maintain payments. If a lender applies payments to the fees without notice, then the debtor cannot remain current on the debtor's mortgage, but instead slips into default without any notice of the accruing fees. Requiring lenders to seek Reimbursable Expenses as they are incurred during a chapter 13 plan does not conflict with § 1322(b)(2)'s prohibition against modification of a mortgage lender's contract rights. Section 1325(b)(5) is a specific exception to § 1322(b)(2).

After a plan is confirmed, debtor and creditor rights and responsibilities are defined by the confirmed plan. The Court order confirming the plan binds the debtor and mortgage lender to the allocation scheme provided for by the plan. 11 U.S.C. § 1327(a).[4] The Court order imposes reciprocal rights and obligations on the debtor and the mortgage lender. Both the debtor and the mortgage lender must abide by their plan obligations to protect the other's rights.

The debtor's obligations ensure payments to the mortgage lender and protection of the lender's collateral. Accordingly, the debtor must make all payments within the time and in the amount prescribed by the plan. If the debtor misses a payment, the debtor violates the terms of

---

[3] In some cases, a single payment is made to the chapter 13 trustee, who then distributes the payments for principal, interest, arrearages and other charges. The Southern District of Texas now generally requires home mortgage payments to be made through the trustee. *Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007). Other plans provide for the debtor to pay a portion of this amount directly to the holder of the mortgage. The payments are made pursuant to the plan, whether or not paid through the chapter 13 trustee. *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478 (5th Cir. 1982).

[4] Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

the plan and the lender may seek relief such as dismissal of the case or termination of the automatic stay.  Upon dismissal or termination, the debtor loses the protections of the automatic stay and the lender may foreclose on the home.

The creditor's obligations ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default.  Accordingly, the creditor must allocate payments pursuant to the plan.  Improper allocation of payments deprives a debtor of the promised fresh start and the rights provided by § 1322(b)(5) to cure arrearages and remain current on mortgage obligations.  Thus, the mortgage lender must allocate payments among principal, interest, and arrearages in the manner prescribed by the plan.  If a mortgage lender allocates payments that the plan dedicates to pre-petition arrearages to principal and interest or a post-petition charge, without court approval, the mortgage lender violates the terms of the plan and the lender may be subject to liability for violating the order confirming the plan.

If a debtor completes the arduous three or five-year journey through chapter 13, the Bankruptcy Code grants the debtor a fresh start.  Section 1328 grants the debtor a discharge of most debts provided for by the chapter 13 plan.  Upon receiving a discharge, the debtor is immune from personal liability on any discharged debt.  A creditor cannot attempt to collect a discharged debt without violating § 524's explicit injunction against such collection efforts.

Not all debts are discharged by § 1328.  Congress excepted mortgage debts from discharge.  Section 1328(a)(1) specifically excepts from discharge "debts provided for under section 1322(b)(5)."  Principal, interest, and arrearages provided for by the plan are not discharged.  Nor are Reimbursable Expenses incurred (but not collected) discharged.  Though the Reimbursable Expenses are provided for by the plan through § 1322(b)(2)'s incorporation of

the contractual right to collect the expenses, mortgage debts provided for by the plan but not paid by the debtor are not discharged.

The fact that the debts are not discharged does not mean that the debts are not satisfied. When the plan is fully performed according to its terms, the arrearage has been cured and the ongoing mortgage payments have been maintained. Sections 1322(b)(5) and 1322(c), allowing debtors to cure defaults and remain current on their mortgage obligations, and the court order that confirmed the plan and imposed the binding effect of a plan provided by § 1327(a), have the effect of bringing debtors current on their mortgage obligations. Alternative interpretations of §§ 1322(b)(5), 1322(c) and 1327(a) would emasculate the underlying fresh start purpose of chapter 13.

Enforcement of the Court's order confirming a chapter 13 plan, §§ 1322(b)(5), 1322(c), and 1327(a), and the fresh start, all require enforcement of Federal Rule of Bankruptcy Procedure 2016(a). Rule 2016(a) requires any party who seeks compensation from a debtor's estate to file with the court an application setting forth the source of the costs and the amounts requested.[5] Accordingly, a mortgage lender must file a Rule 2016 application before collecting any Reimbursable Expenses while a chapter 13 case remains pending. Absent the notice and court oversight triggered by Rule 2016(a), the debtor would have no knowledge of undisclosed, accruing fees charged to their account. The concepts of "curing" an arrearage and "maintenance of payments" would be ephemeral.

---

[5] Rule 2016(a) provides: "Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested . . . *The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity*." Fed. R. Bankr. P. 2016(a) (emphasis added).

Collecting Reimbursable Expenses without filing a Rule 2016 application or after the completion of a debtor's plan obligations would violate the order confirming the debtor's chapter 13 plan. A mortgage lender may not disrupt the payment allocation scheme provided by the plan by diverting amounts dedicated to arrearages or principal and interest without court approval. Until the Court reviews a Rule 2016 application and issues an order modifying the payment allocation scheme provided by a chapter 13 plan, a mortgage lender may not collect Reimbursable Expenses without violating the order confirming the debtor's plan.

Chapter 13 and the fresh start purpose do not allow a lender to place a former debtor in default and foreclose on a debtor's home for undisclosed charges that accrued during the course of the bankruptcy case. The Supreme Court, Circuit Courts, and bankruptcy courts in all jurisdictions speak of the fresh start for a reason. Chapter 13 exists for a purpose.

## Mandatory Withdrawal

### 1. Section 157(d)

The mandatory provision of § 157(d) provides: "The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires *consideration* of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). The Fifth Circuit has not had the occasion to interpret § 157(d). However, substantial jurisprudence has developed outside the Fifth Circuit.

The Seventh Circuit's *In re Vicars Insurance Agency* opinion is the only circuit court to have considered § 157(d)'s mandatory withdrawal provision in detail. *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949 (7th Cir. 1996). The *Vicars* Court adopted the "substantial and material consideration" test. *Id*. at 953, 955. A few courts have rejected the substantial and material

language for a more literal interpretation of § 157(d). *In re Kiefer*, 276 B.R. 196 (E.D. Mich. 2002); *Martin v. Friedman*, 133 B.R. 609 (N.D. Ohio 1991). However, the "substantial and material consideration" test is the majority rule. *Vicars*, 96 F.3d at 952 ("This 'substantial and material' gloss has been accepted as an appropriate reading of the statute and effectuation of Congress' intent by most courts, including the Second Circuit.") (citing *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (F.2d Cir. 1990); *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984)); *In re Nat'l Gypsum Co.*, 145 B.R. 539 (N.D. Tex. 1992); *Sibarium v. NCNB Tex. Nat. Bank*, 107 B.R. 108, 111 (N.D. Tex. 1989) ("Courts now generally agree that a party making a timely motion for mandatory withdrawal must establish that the proceeding involves a 'substantial and material' question of both Title 11 and non-Bankruptcy Code federal law . . ."); COLLIER ON BANKRUPTCY ¶ 5011.01[1][b][ii] (15th ed. rev. 2008) ("The vast majority of cases require a 'substantial and material' issue of non-bankruptcy law, following *In re White Motor Corp.*").

Courts have generally reasoned that "any reading of § 157(d) which limits bankruptcy court jurisdiction to questions arising solely under the Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous Code provisions themselves require reference to other state and federal law." *Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*, 395 B.R. 7, 10 (E.D. Mich. 2008) (quoting *In re White Motor Corp.*, 42 B.R. at 703). "Bankruptcy courts provide the expertise and efficiency intended by Congress in adjudication of bankruptcy matters, and, as a result, withdrawal cannot be based on 'speculation about . . . issues which may or may not arise and may or may not be germane to resolution of . . . [the] proceedings.'" *In re Nat'l Gypsum Co.*, 145 B.R. at 541 (quoting *In re White Motor Corp.*, 42 B.R. at 705).

Courts have been less consistent in defining what constitutes "substantial and material consideration." However, the majority of courts "generally require that the issues in question require more than the mere application of well-settled or 'horn-book' non-bankruptcy law; 'significant interpretation' of the non-Code statute must be required." *Vicars*, 96 F.3d at 953 (citing *U.S. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 63 B.R. 600, 603 (S.D.N.Y. 1986); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)). The Seventh Circuit in *Vicars* concluded:

> We therefore hold that as far as non-title 11 issues are presented, mandatory withdrawal is required only when those issues require the *interpretation*, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of *significant open and unresolved issues* regarding the non-title 11 law. The legal questions involved need not be of 'cosmic propositions,' *In re Rimsat, Ltd.*, 196 B.R. 791, 799 (N.D. Ind. 1995), but must involve more than mere application of existing law to new facts.

*Vicars*, 96 F.3d at 954 (emphasis added). *See also*, *Chao v. Holman (In re Holman)*, 325 B.R. 569, 573 (E.D. KY 2005) (citing *Vicars*, 96 F.3d at 954). The *Vicars* Court went on to reject the moving party's motion for mandatory withdrawal because a "conjectural concern by itself" was insufficient.

The party seeking withdrawal of the reference bears the burden of establishing grounds for mandatory withdrawal. *Vicars*, 96 F.3d at 953; *In re Anderson*, 395 B.R. at 9.

### 2. Analysis

GMAC seeks mandatory withdrawal of the reference based on an alleged need to consider RESPA and the FDCPA. Based on developments subsequent to GMAC's filing of its motion to withdraw, the Court need not now consider whether the Court will have to consider RESPA and the FDCPA to an extent that withdrawal of the reference is mandatory under 28 U.S.C. § 157(d).

### a. RESPA

At this stage in the litigation, GMAC's RESPA arguments are purely speculative. Plaintiffs have not pled a cause of action based on RESPA. Plaintiffs' September 5, 2008 responsive briefing (docket no. 28) repeats that Plaintiffs seek no relief under RESPA. GMAC reasons that § 1322(b)(2) of the Bankruptcy Code preserves a mortgage lender's pre-petition contractual rights to collect escrow shortages and other fees and expenses. RESPA governs a mortgage lender's right to collect these amounts. Accordingly, GMAC contends that the Court must apply RESPA to determine whether or not GMAC breached its mortgage contracts with Plaintiffs. GMAC also contends that RESPA may provide an affirmative defense to Plaintiffs' claims. However, neither GMAC's motion to withdraw the reference, reply briefing, or oral arguments articulated *how* any provision of RESPA would serve as an affirmative defense. GMAC argues that RESPA governs how escrow accounts must be managed, but never asserts that RESPA in any way preempts obligations imposed by the Bankruptcy Code. The Court is not aware of any provision in RESPA that immunizes mortgage lenders from Bankruptcy Code obligations or Bankruptcy Court orders. The Fifth Circuit recently issued an opinion holding that RESPA rights do not override the Bankruptcy Code. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354 (5th Cir. 2008).

During the November 10 hearing, the Court suggested abating consideration of the RESPA issue until the case matured to the point where RESPA's involvement or lack of involvement crystallized. Plaintiffs stipulated that they would not oppose as untimely a later motion to withdraw the reference based on RESPA so long as the renewed motion was filed timely in relation to the time at which the RESPA issue arises. GMAC stipulated to dismissing

their RESPA argument with the right to renew the argument at a latter date. Accordingly, GMAC's RESPA argument is not ripe for consideration.

### b. FDCPA

GMAC's argument for mandatory withdrawal of the reference based on the FDCPA is moot based on the Court's prior oral ruling that the FDCPA claims would be dismissed for lack of subject matter jurisdiction.

During the November 10, 2008 hearing, the Court held that the Court did not have subject matter jurisdiction over Plaintiffs' FDCPA claims. The FDCPA claims are not core matters that arise under title 11 or arise in a case under title 11. If Plaintiffs' had pending chapter 13 cases and had not received a discharge, the Court may have "related to" jurisdiction over those claims. The claims could lead to a judgment that would increase estate assets. However, Plaintiffs have all received discharges. Regardless of whether the cases are open or closed, the FDCPA claims could not "affect" Plaintiffs' bankruptcy estates. Reopening a case is a ministerial act that will not lead to an increase or decrease of estate assets. Plaintiffs' bankruptcy estates have been fully administered.

Plaintiffs' sole argument for why this Court has subject matter jurisdiction over the FDCPA claims was based on 28 U.S.C. § 1367. Section 1367 grants district courts supplemental jurisdiction over claims related to claims over which the district court has original jurisdiction. 28 U.S.C. § 1367. However, the Fifth Circuit has unequivocally stated that bankruptcy courts do not have supplemental jurisdiction. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir. 1995). Plaintiffs could still prosecute these claims if the reference was withdrawn back to the District Court. Plaintiffs stated that they would willingly dismiss the FDCPA claims rather than assent to withdrawal of the reference to prosecute the FDCPA claims in the District Court.

Accordingly, the Court will dismiss Plaintiffs' FDCPA claims in a subsequent order resolving GMAC's motion to dismiss.

## Permissive Withdrawal

### 1. Section 157(d)

The permissive withdrawal provision of 157(d) provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

In the Fifth Circuit, courts consider five factors when evaluating whether the moving party has demonstrated "cause" for withdrawal of the reference:

- ▪ promoting uniformity in bankruptcy administration;

- ▪ reducing forum shopping and confusion;

- ▪ fostering the economical use of the debtors' and creditors' resources;

- ▪ expediting the bankruptcy process;

- ▪ whether jury demands have been made; and

- ▪ core versus non-core matters.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *Levine v. M&A Custom Home Builder & Developer*, --- B.R. ---, 2008 WL 5082400 (S.D. Tex. Nov. 25, 2008); *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 767 (S.D. Tex. 2007).

The Second Circuit has held that the core versus non-core factor is the most important. *South St. Seaport Ltd. P'ship v. Burger Boy (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). The Second Circuit reasoned that this factor dominates the uniformity and

16

efficiency concerns because bankruptcy courts have greater expertise and can issue final orders only with respect to core matters. *Id.*

The party seeking withdrawal of the reference bears the burden of establishing grounds for permissive withdrawal. *Vicars*, 96 F.3d at 953.

### 2. Analysis

GMAC contends that each of the permissive withdrawal factors favor withdrawal of the reference. The Court considers each factor separately below.

#### a. Non-Core Claims

At its core, Plaintiffs' complaint seeks relief for violations of the Bankruptcy Code, court orders confirming Plaintiffs' chapter 13 plans, and Federal Rule of Bankruptcy Procedure 2016. The essence of the complaint is not whether GMAC's collection activities breached the mortgage contracts. Rather, the complaint is based on whether the Bankruptcy Code and Rules allow GMAC to collect the disputed fees in the manner alleged. "[T]he nature of the action is controlling, not the parties' characterization." *Veldekens*, 362 B.R. at 768. These are core matters. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 451–52 (Bankr. S.D. Tex. 2008). Plaintiffs' complaint is a core matter that "could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). A compliant based on violations of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Court orders can only arise in a bankruptcy case.

GMAC asks the Court to ignore the theories of recovery asserted by Plaintiffs and instead find that Plaintiffs are instead asserting contract claims. GMAC again contends that § 1322(b)(2) preserves its mortgage contract rights within the bankruptcy case, and, therefore, Plaintiffs' claims are really allegations that GMAC violated the mortgage contracts. Moreover,

17

GMAC contends that the Bankruptcy Code and Rules Plaintiffs allege GMAC violated do not authorize a private cause of action.

Plaintiffs are entitled to choose their theories for recovery. If GMAC is correct that Plaintiffs can, at most, only assert a cause of action based on RESPA or their mortgage contracts, then Plaintiffs' claims based on the Bankruptcy Code and Rules do not state a claim for which relief can be granted and the Court will grant GMAC's motion to dismiss. The Court will consider the merits of Plaintiffs' theories when it takes up the motion to dismiss. With respect to withdrawal of the reference, the focus is not on the merits of a claim, but the nature of the claim. Regardless of the merits of Plaintiffs' claims, the claims asserted are core.

GMAC also contends that Plaintiffs' claims are non-core because they cannot affect Canos' bankruptcy estate. GMAC contends that the claims involve homesteads which were exempted from the bankruptcy estates. GMAC's argument obscures the facts. It is the allegedly unlawful accounting and collection practices, not the homesteads, that are the bases of this suit. Plaintiffs' lawsuit alleges that GMAC violated Bankruptcy Code provisions, Bankruptcy Rules, and court orders confirming chapter 13 plans through its accounting and collection practices. The alleged conduct would constitute a violation of the court orders confirming Plaintiffs' respective plans. As such, the claims arise in cases under title 11 and are within the Court's core subject matter jurisdiction.

GMAC makes two additional arguments with respect to the putative class members. GMAC argues that the putative class members' claims cannot be core because their claims cannot affect the Canos' bankruptcy estate and some of the class members' cases have been closed.

GMAC's arguments are jurisdictional and do not impact the core versus non-core

characterization of the claims. As repeatedly stated, Plaintiffs' claims based on the Bankruptcy Code, Rules, and court orders are core claims. The Court notes that it has previously considered and rejected the same jurisdictional arguments in a prior opinion. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D. Tex. 2008). The Court will resolve the jurisdictional arguments when it considers GMAC's motion to dismiss. However, for the sake of completeness, the Court briefly considers the arguments.

GMAC's jurisdictional arguments misconstrue the relation between adversary proceedings and bankruptcy cases. The docket sheet for an adversary proceeding shows a case relationship solely for administrative—not jurisdictional—reasons. For the purposes of "arising in" and "arising under" jurisdiction, an adversary proceeding need not relate to only one bankruptcy case. Nothing within § 157(b) ties the core versus non-core characterization of a claim raised in an adversary that arises under or arises in a case under title 11 to the individual bankruptcy case of the plaintiff in the adversary.

Additionally, a claim need not have an effect on a particular bankruptcy estate in order for a bankruptcy court to have authority to resolve the claim with a final order. The effect analysis is only relevant if the court's authority to hear the case is limited to "related to" jurisdiction under 28 U.S.C. § 1334(b). Section 1334(b) gives the Court authority to consider all matters arising under title 11, and matters arising in cases under title 11, in addition to matters that relate to a bankruptcy case. 28 U.S.C. § 1334(b); *Rodriguez*, 396 B.R. at 448. Plaintiffs' claims essentially allege violations of the Bankruptcy Code, Bankruptcy Rules, and court orders confirming Plaintiffs' chapter 13 plans. These claims arise under title 11 and arise in cases under title 11. The Court has authority under § 1334(b) to hear the claims. Pursuant to § 157(b), the claims are also core matters that this Court can resolve by a final order. The claims could arise

19

only in the context of bankruptcy cases and are therefore core. *In re Woods*, 825 F.2d at 97.

Nor does the fact that some putative class members' cases are closed impact this Court's jurisdiction. Courts retain jurisdiction over closed cases to protect important debtor rights created by the Bankruptcy Code and to enforce court orders. *In re Rodriguez*, 396 B.R. at 452–54.

Plaintiffs' complaint also asserts breach of contract claims. Plaintiffs allege that GMAC's alleged collection of unapproved fees and costs violated the contract formed by their confirmed plans. The Court has an obligation to characterize claims based on their substance rather than form. *Veldekens*, 362 B.R. at 768. In substance, this breach of contract claim is a claim for breach of the court order confirming Plaintiffs' chapter 13 plan. As discussed above, this is a core claim.

Accordingly, the core versus non-core factor weighs against withdrawal of the reference.

### b. Jury Trial Right

A bankruptcy court cannot hold a jury trial without the consent of all parties. *In re Clay*, 35 F.3d 190, 196–97 (5th Cir. 1994). GMAC has stated that it will not consent to a jury trial in the Bankruptcy Court. GMAC may indeed have a 7th Amendment jury trial right. The Supreme Court has articulated a two-part test for determining whether a party as a 7th Amendment jury trial right: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989) (quoting *Tull v. U.S.*, 481 U.S. 412, 417-18, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987)). "The second stage of this analysis is more important than the first." *Granfinanciera*, 492 U.S. at 42. A request for a money judgment generally indicates that

the claim should be denominated as legal rather than equitable. *See Granfinanciera*, 492 U.S. at 47; *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 476, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962). Plaintiffs' complaint seeks money damages, including punitive damages, a legal remedy. For the purposes of the permissive withdrawal analysis, the Court can assume that GMAC does in fact have a 7th Amendment jury trial right without impacting the analysis's outcome.

GMAC has not asserted a jury demand. The mere suggestion that GMAC may assert a jury demand in the future is insufficient to warrant withdrawal. The Fifth Circuit's *Holland* opinion holds that the Court should consider whether a jury trial has been *demanded. Holland Am. Ins. Co. v. Succession of Shepherd J. Roy*, 777 F.2d 992, 999 (5th Cir. 1985). The factor is called the "jury demand" factor, not the "jury right" factor. *Holland* says nothing about a jury trial right that exists but has not been exercised. GMAC cites *Veldekens* for the proposition that a reference can be withdrawn even though a jury right has not been determined. *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 769 (S.D. Tex. 2007). However, *Veldekens* did not imply, contrary to *Holland's* specific language, that the reference can be withdrawn when a jury demand has not been asserted. Rather, *Veldekens* implied that the reference can be withdrawn without determining whether a party has a 7th Amendment jury trial right based on the *assertion* of the jury trial right alone. *Id*. The *Veldekens* court held that the jury demand factor favored withdrawal because "[t]he Veldekens demanded a jury trial, that demand is not obviously invalid, and the requirements of § 157(e) have not been satisfied." *Id*. Again, GMAC has not asserted a jury trial right.

Accordingly, the Court gives no weight to the jury demand factor.

### c. Uniformity and Economical Use of Resources

GMAC argues that withdrawal of the reference will lead to greater efficiencies because

GMAC will have greater appellate rights in the District Court, and only the District Court will be able to issue a final order resolving all issues presented by Plaintiffs' complaint. GMAC also notes that the Bankruptcy Court has not developed any expertise in this case that would be lost upon withdrawal.

GMAC contends that withdrawal would lead to greater efficiencies because rules allowing interlocutory appeals may only apply to district court orders, and not bankruptcy court orders. Rule 23(f) authorizes circuit courts to consider an interlocutory appeal of a class certification decision. Fed. R. Civ. P. 23(f).[6] Section 1292(b) of title 28 also authorizes interlocutory appeals. 28 U.S.C. § 1292(b).[7] The 11th Circuit has issued an Opinion interpreting Rule 23(f) and § 1292(b) that is consistent with GMAC's contention. *Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241, 1246 (11th Cir. 2002).[8]

It is difficult to give substantial weight to a factor that was universally present because to do so would appear contrary to Congressional intent to make bankruptcy courts the focal courts for bankruptcy cases.[9] Although the same limitations on appellate rights were present in all

---

[6] Rule 23(f) provides: "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 10 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f).

[7] Section 1292(b) provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).

[8] The Fifth Circuit has not considered Rule 7023(f) and § 1292(b) application to bankruptcy court orders. Because the Court finds that GMAC's appellate concerns, accepted as true, are not sufficient for withdrawal of the reference, the Court does not consider the limits of Rule 7023(f) and § 1292(b) in this Report and Recommendation.

[9] In 2005, Congress passed 28 U.S.C. § 158(d). Section 158(d) authorizes direct appeals of bankruptcy court orders to the circuit court under certain circumstances. 11 U.S.C. § 158(d). However, § 158(d) only applies to cases filed

bankruptcy cases prior to the 2005 amendments, the Court finds that GMAC's appellate concerns slightly favor withdrawal of the reference. The opportunity to appeal directly to the Fifth Circuit and avoid intermediate review by the District Court is an important right that would increase efficiencies.[10]

GMAC also contends that trial in the District Court will be more efficient and lead to more uniformity because only the District Court will be capable of issuing a final order on all matters presented by Plaintiffs' compliant. GMAC's argument assumes that Plaintiffs' claims are non-core claims that only the District Court can resolve by a final order. As discussed above, Plaintiffs' complaint asserts only core claims.. Plaintiffs' adversary proceeding is a core-proceeding.

Along similar lines, GMAC contends that trial in the District Court will be more efficient because bankruptcy courts do not have jurisdiction over class action lawsuits. However, the Fifth Circuit has not held that bankruptcy courts lack jurisdiction over class actions. Numerous courts have held that the bankruptcy courts *do* have jurisdiction over class actions. *See, for e.g., Sims v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 485–87 (Bankr. E.D. Tenn. 2002) (citing numerous cases finding bankruptcy court jurisdiction over class actions). Moreover, Rule 7023 of the Federal Rules of Bankruptcy Procedure explicitly incorporates Rule 23 of the Federal Rules of Civil Procedure. Rule 23 governs the administration of class action lawsuits. Accordingly, GMAC's argument based on class action jurisdiction is too speculative to merit significant weight.

---

after 2005. The Court does not consider whether § 158(d)'s limitation to cases filed after 2005 applies equally to adversary proceedings.

[10] The Court notes that there is value to be gained from an intermediate appeal to the District Court. *See, Weber v. U.S. Trustee*, 484 F.3d 154, 161 (2d Cir. 2007) ("Nevertheless, although Congress emphasized the importance of our expeditious resolution of bankruptcy cases, did not wish us to privilege speed over other goals; indeed, speed is not necessarily compatible with our ultimate objective-answering questions wisely and well. In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful.").

GMAC also notes that the Bankruptcy Court has not had the opportunity to develop an expertise with the adversary proceeding such that withdrawal would lead to inefficiencies to the extent withdrawal requires the District Court to become familiar with what was already known by the Bankruptcy Court. This Court has yet to make any significant rulings in this adversary proceeding. Discovery has not commenced. Other than a hearing on the motion to withdraw the reference and the motion to dismiss, this Court has not held any significant hearings. The Court also notes that GMAC timely filed their motion to withdraw the reference in July of 2008. It would be unfair for this Court to delay ruling on a motion to withdraw the reference and then deny the motion because of all that the Court learned during the delay.

The Court also notes that the Bankruptcy Court and District Court's experience with the issues raised by Plaintiffs' complaint suggest that adjudication in the Bankruptcy Court would be at least as efficient as adjudication in the District Court. Plaintiffs' adversary proceeding implicates difficult and novel class action issues. Arguably, the District Court has greater experience with class actions. However, this Court is far more intimate with chapter 13 procedures and the provisions of the Bankruptcy Code and Rules that govern those procedures. The heart of Plaintiffs' complaint raises complex bankruptcy issues that will be resolved by a thorough analysis and application of the Bankruptcy Code and Rules. The Court has no doubt that the District Court would resolve these issues with great expertise. The Court only notes that the efficiency argument based on a court's alleged greater expertise in a particular area of law cuts both ways.

Accordingly, based on the appellate concerns, this Court finds that the efficiency and uniformity factor slightly favors withdrawal of the reference.

### d. Forum Shopping and Confusion

GMAC contends that withdrawal will reduce forum shopping and confusion because only the District Court can issue a final order on non-core matters. As discussed above, this adversary proceeding is a core proceeding. The forum shopping and confusion factor is neutral with respect to withdrawal.

### e. Expediting the Bankruptcy Process

This factor is neutral with respect to withdrawal. GMAC offered no supported reasons why any bankruptcy case or this adversary proceeding would be resolved more or less timely in the Bankruptcy Court or the District Court. Moreover, many of the putative class members' bankruptcy cases are closed. Accordingly, the Court finds that withdrawal would not expedite the bankruptcy cases.

### f. Summary

For the reasons set forth above, the Court finds that permissive withdrawal of the reference is not warranted. Notwithstanding the appellate rights issue, the remaining permissive withdrawal factors either favor maintaining the reference with this Court or are neutral with respect to withdrawal. On balance, the factors weigh against withdrawal of the reference. GMAC has not met its burden to show cause for permissive withdrawal.

### Conclusion

Just last September, before the Eastern District of Michigan District Court and in a case involving allegations identical to those asserted by Plaintiffs, Countrywide Home Loans, Inc. urged nearly the identical arguments for withdrawal of the reference urged by GMAC in this adversary proceeding. *Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*, 395 B.R. 7 (E.D. Mich. 2008). In *Anderson,* plaintiff Anderson, on behalf of a debtor class, alleged that

25

Countrywide charged and collected unauthorized fees, costs, and other charges post-petition. *Id.* at 8–9. Plaintiff alleged that Countrywide's conduct violated the automatic stay, the plaintiff's confirmed chapter 13 plan, and the discharge injunction. *Id.* at 9. As in this case, Countrywide requested withdrawal of the reference under the mandatory and permissive provisions of 28 U.S.C. § 157(d). *Id.*

> With respect to Countrywide's permissive withdrawal arguments, the District Court held:

> Nor is the court persuaded that it should exercise its discretion to withdraw the reference. To state the obvious, the bankruptcy court exists to handle bankruptcy matters. It has special expertise in this area of the law, and cases within this area of expertise should not be withdrawn without good cause. Countrywide has not shown good cause in this case. Plaintiff's claims are all "core" bankruptcy matters; in her amended complaint plaintiff has eliminated all of her state-law claims. Countrywide's "efficiency" arguments are also unconvincing. These arguments are based entirely on Countrywide's speculation as to how the bankruptcy court may deal with the class certification issues. While the court agrees that judicial economy is an appropriate consideration in deciding a motion for discretionary withdrawal, the court believes judicial economy is better served by allowing the bankruptcy court, which is already familiar with this case and has special expertise in bankruptcy law and procedure, to handle all of the pretrial proceedings.

*Id.*

This Court agrees with the Michigan District Court's reasoning. *See also, Harris v. Washington Mutual Home Loans, Inc. (In re Harris)*, 312 B.R. 591 (N.D. Miss. 2004) (denying the lender's motion to withdraw the reference for a class action adversary proceeding involving similar facts).

For the reasons set forth above, GMAC has not met its burden with respect to establishing grounds for mandatory or permissive withdrawal. This Court recommends denying GMAC's motion to withdraw the reference (docket #8).

Signed at Houston, Texas, on April 2, 2009.

MARVIN ISGUR
United States Bankruptcy Judge